Mr. Gunn, we can't hear you. Could you turn up your microphone? Can you hear me now, your honor? All right, I'll try to talk very loudly. I have tested it without this microphone before, and it's worse without the microphone. So please forgive my having a headset on, and I'll try to talk loudly. Your honors, I'm going to try to save three minutes for rebuttal, and I'll try to keep track of my time. I'd like to start with the premeditation issue to avoid using up all my time on the rehafe issue, which I could envision happening. Ideally, I'm going to try to split my time between those two issues. There are two questions to consider on the premeditation issue. First, was the evidence sufficient to be clear and convincing evidence of premeditation, even if the court applied the correct legal standard? Second, is there some indication that the court did not apply the correct legal standard? On the sufficiency of the evidence, your honors, you can both look at the factors the cases say to look at, and you can compare the facts of those cases. Could you help me with the standard of review? Are we looking at whether the district court, let's see, so we're looking at, it's an abuse of discretion review, but the finding has to be by clear and convincing evidence, so we're looking at whether it was illogical, implausible, or without support in the record for the district court to determine there was premeditation by clear and convincing evidence? Correct, except there's an additional nuance, and that if there's some indication that the district court applied the wrong legal standard, that's by definition an abuse of discretion, and I think under Gasca-Ruiz, the test is whether there's, quote, some indication, unquote. Remember, we're just remanding for resentencing here. We're not remanding for a new trial, so the cost of a remand is a lot less. You correctly separated your argument into two halves. One is that the right standard was there not sufficient evidence. On that second one, is Judge Akuda correctly stated our standard of review? Yes, there's different ways, I think, of stating the abuse of standard, standard, or abuse of discretion standard, and I think she chose the, there's other ways of stating it that aren't quite so strong, but yes, it's an abuse of discretion standard under Gasca-Ruiz. So it's a factual finding, and the question is whether there were sufficient facts in a record from which a reasonable trier of facts could find that there was premeditation, right? Correct, and I think there weren't here if you look at the cases. First, you can look at the factors they list. Second, you can compare the facts. There is no case that has come even close to saying that this sort of detention that then erupts into a spontaneous struggle over a gun with an attempted shooting in the space of a minute is premeditation. Well, so let me, let me pose, let me pose a different scenario for you, and see if you can respond to it. I understand when two people are struggling over a gun, and it goes off, there might not be premeditation. Well, excuse me. But here, here, here it appears that the evidence is that your client got sole possession of the gun, then pointed it at the officer and pulled the trigger. Maybe there's not extended premeditation, but under those facts, why isn't there enough for a reasonable finder of fact to find that there was premeditation? First of all, let me step back to your first clause in that question, Your Honor, where I unfortunately rudely interrupted you. The gun going off accidentally, you wouldn't even have intent. So of course, you wouldn't have attempted murder at all. So gun going off accidentally, we're not even there. So the question is, where do you draw the line between intent and premeditation? I have not tried to argue that there wasn't an attempted murder here. We have conceded there's sufficient evidence to find intent. But premeditation is a significant step beyond. Okay, but still still deal with deal with the facts of this case for a moment. Your client, your client gets possession of the gun, points it at the officer, and pulls the trigger. Maybe I wouldn't find it, but for a reasonable finder of fact to find that there was premeditation. Because what that is, Your Honor, is intent to kill. There's no planning activity, which is one of the factors the courts looked at. There's no carrying a weapon to the scene. There's no other calculated behavior. There's an agitated defendant as opposed to an unagitated defendant. You have no prior relationship with a victim suggesting a motive. Those are all factors this court has emphasized in rejecting other sufficiency challenges. Compare the facts in the four Ninth Circuit cases that are out there. They don't even approach the facts in this case. So with that, I think that's that's the response. Yeah, but none of those cases, with respect, none of those cases say, this is the bottom line. This is the zenith. They all look at the facts and find either find premeditation or don't. So I'm still stuck with the question. If somebody takes a gun from somebody else in a struggle, has enough time to take it away, point it at someone, and then pull the trigger, and you say it's within a minute, but we don't really know how many seconds I can tell from this. He possessed it after having taken it away. You're saying it's a matter of law, one can't find premeditation there? Yes. What we can tell in this case is it's I think when it's one continuous action, that's not enough. And I think that what's your best case for saying that this situation cannot be? There's no case on that, your honor. There's no case one way or the other. I don't have a case, but the government doesn't have a case. There is some real concern here, I think, because this really is intent rather than premeditation of the district court, possibly applying an If you look at the things the district court pointed to in its reasoning and the prosecutor in making her argument, they're all things that show intent. The court says the defendant took the gun out of the holster and then started to fire it at the agent. That's premeditation. That's intentional conduct. No explanation of why it's premeditation instead of just intent. The defendant was attempting to commit the crime of murder. That's intent. Well, this one says he had time to reflect and decide how he was going to interact with Agent Lynn. Right. But I think that adds that as well. That's in deciding to try to kill him as opposed to run away. That's part of the same statement, right? This defendant had time and reflection from the very start of the incident. Right. But the start of the incident is where he decides to run away or submit the prosecutor. It's the same thing. Everything the prosecutor points to is he didn't run. This is an appellant's opening brief and pages 36 and 7. There was no reason he didn't run. He didn't just incapacitate the officer. He didn't just want to get his gun away from him. These are actions of a man who is trying to kill someone. Again, the prosecutor's reasons all focus on intent as opposed to premeditation. Well, but if we were dealing with the first sentencing, I think I'd tend to agree with you about the wrong legal standard. But Judge Jorgensen seems to have gotten the legal standard right the second time. She stated what it was. So I think your only good argument the second time is the absence of enough facts to support it. Well, tell me how she got the legal standard wrong the second time. I think she got the legal standard wrong. It's an appellant's opening brief at 37, Your Honor. She says the defendant took the gun out of the holster and then started to fire at the agent. No, those are facts. Those are facts. When she stated the legal standard the second time, did she get it wrong? When she said, here's what the law is on premeditation? I don't think she got it. The error is when she matched that to the facts of this case. Okay. So if she stated the right legal standard, what you're really saying is that the facts aren't sufficient under that standard to constitute premeditation. But I'm also saying, Your Honor, that the way she applied it is in the words of Gasca Ruiz, some indication that she applied the wrong legal standard. So I think that is a signal. I don't know if the court wants me to spend some time talking about Rehae. I'd be glad to spend more time on premeditation if the court wants, but I see I'm down to six minutes. Well, I guess on Rehae, since this was a trial, we're now in Johnsonland. I don't think we are in Johnsonland. Why not? Because I filed a response to the government's supplemental authority letter. Johnson was a relied on the fourth prong of plain error. That doesn't apply here because here there was a sufficiency of evidence challenge in the district court, and the government even acknowledges that in their brief. So you're under de novo review, applying the Neville standard, and the Neville standard says you look at, quote, the evidence presented at trial, unquote. So we're not in Why wasn't the stipulation presented to the jury sufficient under the Neville standard, taking the evidence in the light most favorable to the government? Well, the stipulation, of course, said nothing about whether the defendant knew he had been convicted of a crime punishable by a year, and I don't think that's an inference that can fairly be drawn without more information about the felony. I would concede that if the felony was murder and that was in the record, I think any defendant or certainly the average defendant would know that murder is punishable by more than a year. If the felony was possession of a controlled substance, the defendant might not know that. Maybe that's a felony, maybe it's not. And this stipulation, of course, says nothing about what type of felony it was, and I think without something more than just felony or crime punishable by imprisonment for more than a year, you can't infer from that, certainly not beyond a reasonable doubt, which is, of course, the standard. You can't infer from that beyond a reasonable doubt. I thought that was the definition of a felony was more than a year. In most jurisdictions, it is. I use them more than a year. I'm sorry, I couldn't quite hear that. So he stipulated he had been convicted of a felony. Actually, he stipulated he'd been convicted by a crime punishable by imprisonment exceeding one year, which is essentially the same thing, but in some jurisdictions, it's sometimes a little different. I'm trying to find the stipulation. Maybe you can help me out. Did he stipulate to the term that he served? No. But if he knew, as he must have in order to stipulate to it, that he'd been convicted of a felony for which the penalty was more than one year, why wasn't it? Couldn't one infer from that stipulation that he knew that? No, because the stipulation is just something he discussed with his attorney for this trial. Well, but surely surely his attorney must have obtained his consent to file the stipulation. Correct. So at the time, I'm sorry. So why doesn't why isn't he? Why isn't he deemed to have knowledge of the facts that were stipulated if they if they'd been proved at trial? If somebody if the government had put on evidence that he was convicted of a felony and for which the penalty was more than a year, couldn't one infer from that that he knew of it? No, I don't think so, Your Honor. He it would depend maybe if the felony was murder and that came into the record. If it was some felony that's a misdemeanor some places and a felony other places and there was no evidence of the sentence he served as opposed to got, I think not. Your Honor, you asked at the beginning of that question about whether his willingness to stipulate shows knowledge. At most that would show him show that at the time of trial his attorney had told him and he accepted what his attorney told him about the crime being punishable for a term exceeding one year. It doesn't show. Pardon me, Your Honor. Do you want to save time for rebuttal? Yes, if I could, thank you for catching me. We'll hear from the government. May it please the court, counsel. Good morning, Your Honors. I'm Angela Woolrich appearing on behalf of the United States. Before I launch into my argument, I just want to confirm that everyone's able to hear me clearly. Great, thank you. I will start with the premeditation issue as well and I will try to save some time to discuss any concerns that the court may have about the Ray Height knowledge issue at the end of my argument as well. Your Honors, there certainly was clear and convincing evidence that the district court relied upon to find that the defendant did have sufficient time to form the intent to kill the officer, to be fully conscious of the killing, and that is what this court has held in Reza Ramos is sufficient for premeditation. What's also very important to note in that same case is that this court has told us that we are to look at the particular facts and circumstances of that case as well as the person themselves, the defendant themselves, which is why defendant's reliance on other cases is misapplied here, here we have, and I'll discuss the facts of the case in a moment, but here we also have at sentencing a wealth of information before the district court about the defendant's person, and that includes information that suggests that this is someone that is perfectly capable of forming the intent to kill, reflecting upon that intent to kill, and acting upon that intent to kill. We have the defendant making statements that he has served 10 years in prison in Mexico for attempted murder. He talks about being a hitman for the cartel and purposely killing people. He talks about if he's sentenced to more than 10 years in this case, he'll murder a prison card so he can get the death penalty. These are facts that weren't before, understandably, before the jury at trial, but were before the district court at sentencing, so the district court also has this ability to look at the defendant as a person to decide, is this someone that is capable of forming the intent to kill, and reflecting upon it. I don't have any doubt that this defendant is capable of forming the intent to kill and maybe a bad guy. My question is, in this case, how long, there's a struggle for the gun, and then there's a period after the struggle when Mr. Ornelas has the gun by himself before he fires. Can I tell from this record how long that was? I don't believe we can tell for the record how long it was. We have some statements, I believe the material witness said that the struggle lasted about a minute, also describes two separate shot rounds of instances of gunfire that transpired over enough time for the material witness to get off the ground, he was laying completely flat on the ground for the first shot, get off the ground, run, and was at some point running towards the mountain, or in the mountains, running towards the top of the mountain when he heard the second or third shot, and I believe he estimated that a few minutes had gone by there as well. None of the shots are fatal in this case, so I guess one could have attempted murder with the final shot? That's correct, your honor. I believe based on all the facts that there were attempted murder with each of the six or seven shots that were discharged based on the defendant's admission. And I'm going to focus on the period for premeditation for the third shot. Do we have any, we have the material witness saying he's running and gets some distance away before he hears the third shot, he also hears the victims yell something in the meantime. Your honor, here are those facts for me. Here are all the facts that support premeditation before that third shot. First, and it does not begin with the encounter of the officer, it begins when the defendant first encounters a force service vehicle that says that he was calling his supervisor to help the defendant and the material witness. The defendant then expresses concern that border patrol is coming for them, and he said at that time, he decided, I am not going into custody, I am not going to go to prison, I'm not going to get caught. He starts forming the intent right then and there to do whatever it takes to avoid being apprehended. Then we have the response of the victim, Officer Lindy. From the very beginning, Officer Lindy describes aggressive behavior by the defendant. The material witness is compliant, but the defendant is squaring up, he's showing aggression. Then the defendant fails to comply with commands. Officer Lindy gives him several more commands. The defendant deliberately pretends not to be able to understand English, even though he admits he fully understands English, but he did this purposely in order to distract the officer. Then, while the officer is distracted and trying to handcuff him, the defendant takes that moment, again, this is very calculated action, we have to look at all these actions, very calculated and deliberate, takes that moment to first start reaching for the officer's gun. He reaches for the officer's gun, and he doesn't get it right away. The officer puts his hand on his holster and blocks the defendant from getting that. Again, these are all maybe a quick interaction, but all of these things are taking time. The defendant doesn't give up there, though. Then he uses all of the force he has to knock the officer down to the ground. Again, a very deliberate movement. While the officers are on the ground, a second time, and these are from the defendant's words as well as the officer's, the second time the defendant goes and grabs for the gun in the officer puts his hand over his holster to stop the defendant from getting the gun. He's successful at this time. The defendant, by his own admission, is getting frustrated with the officer not giving up his gun, so he chooses to put the officer in a headlock to try to get him to lose consciousness. This, again, takes some time, and it takes some deliberation and planning for a specific purpose. He puts the officer in a headlock. The officer does start to lose consciousness. He describes laughing out for a moment, and it looks like I'm muted. No, we can hear you. Okay, great. I just had a little pop-up come up. We're muted. I can hear you. Thank you. The officer starts to lose consciousness for a moment. Now, for the third time, the defendant grabs for the gun, and the officer, now kind of fading out of consciousness, is not able to successfully retain it. So, the defendant does get the gun away from the officer. These are all the things that happen before even the first shot. The gun gets the, the defendant gets the gun away from the officer, fires the first shot, and I would submit right there we have attempted murder. Premeditation is an attempted first-degree murder. Then, we have a continued struggle while the officer is on the ground, and I failed to mention before that the defendant hit the officer repeatedly again and again and again. The defendant said this. The officer said this. The material witness said that the defendant kept hitting the officer. He kept hitting him and hitting him. So, again, this is taking time. The defendant fires the first shot. Officer Lindy starts struggling for his life. Again, this isn't something that is happening so quickly because the officer, while it may, again, be a intense situation, the officer isn't giving up. He's fighting as well. He's fighting for his life. The defendant then, again, the struggle continues, and the defendant is pushing the gun into the officer's chest. He deliberately takes the gun, puts the barrel right into the officer's chest where the officer can feel it, and the officer is able to narrowly escape being shot in the chest by moving to the side. The next shot goes off close to his body. In fact, he described later experiencing some hearing loss because the shot was so close to his head, and we also have evidence of a bullet strike directly into the ground in the area of the struggle. It doesn't end there, Your Honor. The defendant continues to fire, again, up six to seven shots total, and these are by his own admissions. This is corroborated by the number of casings and bullets found at the scene. The defendant is struggling so much that the officer has to eventually put him in a maneuver with his legs to get him to loosen his grip on the gun, at which point he finally drops the gun, but it's continuing to struggle and continuing to try to fire, his finger still on the trigger at this time. So, this is not just a moment without reflection. This is deliberate, calculated action. All decided to achieve one purpose, and that is to kill the officer because the defendant is so determined to escape by any means possible, and that only means possible as he recognized right away was to get the officer's son away from him and kill him. The defense here concedes attempted murder, so the only question is, was there enough time for premeditation, and I would submit that based on... Can I ask you, when you finish on this, and I'm to spend at least a couple minutes on rehaif, because I want to hear... Mr. Gunn says, this isn't a Johnson situation because we attack the sufficiency of the evidence. When I looked at the record, I don't see an attack on the sufficiency for failure to prove knowledge of the previous conviction. So, are we in plain error review, or are we in something different? Your Honor, we are in plain error review, and just as this court found in Benamor, which preceded Johnson, but had a similar holding with regard to this post-rehaif knowledge element at a general Rule 29 sufficiency of the evidence argument, but because it did not specifically challenge sufficiency of knowledge of the felon status, that the court applied plain error review, and such is the case here. The defendant made a broad Rule 29 motion and stated for each and every count, but then went to argue, I believe, six of the counts, leaving out both the counts of alien possession of the firearms. Your Honor, counsel for the government pointed that out at the hearing, and the district court even stated that it was interpreting the Rule 29 motion as to the counts argued, not as to the other counts. But in any event, there was no argument made as far as the requisite knowledge that's now required in rehaif, understandably because it wasn't required at the time, but that's the same standard that applied in Benamor, it's the same that applied in Johnson, and as a result, this court is bound by plain error review based on its recent precedent in both Benamor and Johnson. And I've got a question, I've got another question on that front, and it's one for Mr. Gunn also, so he'll know in advance. Let's assume that we, in the future, the indictments allege the requisite knowledge. How does the government prove it up? Your Honor, for instance, in which the defendant is not going to take the stand. Do you, do you put in more than the conviction and the, and the time? Must you show that, find somebody who was in jail with him or something like that? How do you prove it up? Your Honor, again, so now because the knowledge becomes relevant, otherwise previously inadmissible evidence that would have been too prejudicial is now, is now admissible. So for instance, in this where we have, contrary to what defendant argues in their, in their brief and in their letter, we have a defendant who was arrested in November of 2010, sentenced in March of 2011, and then deported in May of 2012. We can show the amount of time, we clearly have evidence that shows the amount of time the defendant was in custody, showing that he knew his conviction was punishable by more than one year, because, so even just the pre-sentence report alone, those facts, which the court can rely upon now that we are, I would argue, in Johnsonland, the court can rely upon that PSR to see that the defendant surely was in custody for more than a year. In fact, exactly those 2.5 years to which he was sentenced. We also can show that the defendant... No, I have no doubt you could show it. I guess you've answered my question. If, if a defendant didn't stipulate to it, you'd put on evidence of how long he was in jail and things like that. Correct, and in the case where a defendant is perhaps a sentence to less than a year, a sentence to probation, we would have instances where there's a plea agreement or a colloquy on the record at the change of plea advising the defendant of the maximum penalty. So I would, I would submit that there, had the government been required to prove that there is certainly a wealth of information the government could have looked to at the time of trial. It's not dispositive in this case. I guess I get back to Mr. Gunn's point. You have to show that he knew at the time that he committed the crime, and that seems to me to present evidentiary issues in a trial that are going to be harmful for defendants, but I guess we'll worry about it when we get to them. Correct, Your Honor, and I would submit that's why there can be no miscarriage of justice, because here the defendant stipulates to the fact of his prior conviction, and at the time all of the elements that were required at that time pre-rehave, to, for his benefit, so that the jury doesn't hear more details about the fact that it was punishable by a term that, how much it was punishable by things of that nature. It shifts the focus away from that status as a felon. So again, there could be no miscarriage of justice when a defendant chooses to shift that focus away from the felon and felony status, and as in this case, focus on other issues such as the intent to kill, such things of that nature, understandably gets that benefit, now can't claim that a miscarriage of justice resulted, especially where the government has ample evidence, as we can see from the record, to prove that knowledge. I see that my time is up, unless there are any further questions. Thank you, Your Honor. Two quick points on the premeditation issue, then I'll turn to the rehave issue. The question here is not whether there was attempted murder, it's a question of attempted first-degree murder. It's a question of whether Mr. Moreno will serve 30 plus years instead of 40 plus years. The government has pointed you to no case suggesting that a continuous struggle like this over a gun of perhaps a minute that leads to shooting is premeditated attempted first-degree murder. On rehave, I want to address a couple points. First of all, the government conceded in its brief that review on the sufficiency issue was de novo, applied on top of the Nevels-Jackson standard. So the government is now changing its position if it's arguing plein air. Go back to brief of appellee and look at its standard of review section. Second, I haven't had the time to quickly look at it, but I don't... All these briefs were written before Johnson, weren't they? Before rehave, sorry. Yes, but that doesn't... Well, no, the briefs weren't written before rehave, they were written before Johnson, but not before rehave, because rehave... Can you address Ms. Woolridge's point that you are... Put aside what the government said in its brief and didn't say. Was your rule 29 motion addressed towards the felon in possession count? No, but it doesn't have to be. It was a general rule 29 motion and the defense attorney specifically said, and I quote this in my brief, that he was raising it as to all issues and all elements. That is sufficient under the case law on motions for judgment of acquittal to preserve a rule 29 motion. You do not need to make specific arguments. I think your honor hit it on the head and the prosecutor pointed out, the way you'd prove this would be very easy. You'd prove it by putting in records of how long the person served in prison, maybe records about showing what was said in court about the sentence. That evidence, of course, is not in this record. Defendants who want to avoid that prejudice could stipulate to not. Let's assume that we're in some sort of Neville review. I'm still having trouble dealing with cases like Nieder from the Supreme Court where they said, well, you didn't prove up one of the essential elements of the crime, but on this record, it's so clear that you could have... We're going to find the error to be harmless. Why isn't the error harmless here? Well, I think Nieder was a jury instruction issue, your honor, but... Okay. The reason, so you get to the question, plain error does apply to the jury instructions issue. So the question for the jury instruction issue is whether there's an effect on substantial rights. The case law in this circuit, first of all, if it's a mens rea element, and I've studied case law on this in my brief, it actually is the prior opinion in this case. If you're talking about a mens rea element, that has an effect on substantial rights, at least more often than not. Secondly, on the record, on the evidence here, there were tribal issues about his knowledge. The evidence here, all we know is he got two and a half years in Arizona, but we know he was released early because he's arrested for being in the area. If anyone has any other questions, I think we have to close here. All right, your honor. All right. The case of the United States, they, which is Lorena O'Malley, is submitted.
judges: Ikuta, Hurwitz, Tagle